ATLANTA & ST. ANDREWS BAY RAILWAY COMPANY, *Plaintiff in Error,* v. C. H. KELLY, *Defendant in Error.*

## Opinion filed April 21, 1919.

1.  A demurrer to a declaration upon the ground that it is vague and uncertain, is so indefinite that it does not serve the purpose of the statute requiring the demurrant to state the substantial matters of law intended to be argued and will not be considered where the declaration does not wholly fail to state a cause of action.

2   A declaration in an action against a railroad for damages for personal injuries is valid, which alleges, among other things, that the plaintiff, a passenger on the train of the defendant, intended to leave the train at a certain station, of which intention the defendant through its train employee knew, and that while the plaintiff was in the act of leaving the train at the said station the train was so negligently handled and operated that the plaintiff was violently jerked and caused to fall so that he was injured.

3.  A passenger on a railroad train may leave the train when it arrives at a station, and it is the railroad company's duty to provide suitable means and a suitable place and allow sufficient time for the passengers to alight safely.

4.  Objections to the admission of evidence should definitely and specifically point out the ojectionable features of the evidence offered.

5.  Where a question is propounded to a witness and objected to by opposing counsel upon valid grounds, and the question is afterwards answered by the witness without objection or motion to strike, the original objection to the question is considered waived.

6.  A passenger on a railroad train is not guilty of negligence which would preclude his recovery for damages for injuries

sustained in alighting from the train, merely because he failed to leave the train through a particular door of the car, the selection of which as the exit for departing passengers not having been announced by persons in charge of the train.

7. It is the duty of a common carrier of passengers to safely deliver a passenger at the latter's destination, and when the train is stopped for that purpose the carrier should allow ample time for all departing passengers to alight safely before starting train again.

8. The competency of evidence is a matter for the court's determination, its sufficiency and weight are matters for the jury. A charge which submits the question of the competency of evidence to a jury is erroneous.

9. The declaration states the plaintiff's cause of action, and when the plaintiff on the general issue meets the burden of proving the facts alleged, to be true, he is entitled to a verdict.

10. Where a trial court in its charge to the jury has announced a correct principle of law applicable to the facts, it is not necessary to repeat the principle in different forms of expression, although requested by counsel.

11. A requested instruction which is not applicable to the evidence is properly refused.

12 Evidence examined and found sufficient to support the verdict in that it measured to the rule that honest and intelligent minds might fairly differ in their conclusions respecting it.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Price & Carter,* for Plaintiff in Error;

*Jefferson D. Stephens* and *R. H. Buford,* for Defendant in Error.

ELLIS, J.—The defendant in error recovered a judgment in the Circuit Court for Jackson County against the plaintiff in error for damages for personal injuries. The plaintiff in error now seeks a reversal of the judgment because it says that the trial court erred in holding that the third and fourth counts of the declaration were good in substance; that the court erred in the admission and rejection of certain evidence and in overruling the motion for a new trial.

The declaration at first contained two counts to which the defendant railroad company pleaded not guilty. The plaintiff then filed two amendments in the form of additional counts to the declaration. These latter counts were numbered three and four. The defendant demurred to these counts, the demurrer was overruled. The points of law indicated to be argued under the demurrer were that the two counts were vague and uncertain, and failed to allege that the plaintiff, who was a passenger on defendant's train and was injured in attempting to alight therefrom, did so at the usual place for passengers to leave the train at the particular station, or "that he alighted from the train under the direction of, or with the knowledge or consent of defendant's servants and employees."

The substance of the four counts of the declaration is that C. H. Kelly on June 11, 1916, was a passenger on defendant's train and desired to leave the train at Alford, Florida; that when the train arrived at the station and

the plaintiff Kelly was in the act of leaving it, the defendant, through its employees, negligently caused the train to move forward, throwing the plaintiff to the ground, from which fall he sustained injuries. There is little or no variation in the four counts so far as the real cause of action is concerned. The third and fourth counts allege that the train was violently jerked while the plaintiff aws in the act of leaving, thereby causing him to fall as alleged in the third count, and causing him to lose his "equilibrium and balance" which made it necessary for him to jump from the train because of the peril he was in, and then sustained the injuries complained of.

The first ground of the demurrer is so indefinite that it does ont serve the purpose of the statute in requiring the demurrant to state the substantial matters of law intended to be argued. The third and fourth counts of the declaration contain averments which may be regarded as wholly unnecessary to the plaintiff's case. They may, upon a casual reading, appear to be involved in some uncertainty, but neither count fails to state a cause of action, although it may be encumbered with unnecessary detail of statement. See Sledge v. Swift, 53 Ala. 110; Warfied v. Hepburn, 62 Fla. 409, 57 South. Rep. 618; Hartford Fire Ins. Co. v. Hollis, 58 Fla. 268, 50 South. Rep. 985; Heathcote v. Fairbanks, Morse & Co., 60 Fla. 97, 53 South. Rep. 950.

The declaration is not obnoxious to the criticism of the defendant's counsel. They say it is not alleged that the train was started with any great force, nor that it was not started in the usual manner, nor is it alleged that the train was not stopped a sufficient length of time to allow the plaintiff to leave. We think the allegations of the declaration are sufficient in these matters. It ap-

pears therefrom that the defendant knew of the plaintiff's intention to leave the train at Alford, and that before the plaintiff did in fact leave the train, but while in the act of alighting it was negligently handled and operated so as to violently jerk the plaintiff and cause him to fall. There is no ambiguity about this allegation. It presents a clear and definite issue and in nowise is calculated to embarrass the defendant in the trial. As to the second ground of the demurrer, viz, that it is not alleged that the train had stopped at the usual place for detraining passengers and that the plaintiff alighted under the direction of the defendant's employees, we think that it is insufficient. In both counts it is alleged that the plaintiff was preparing to leave the train at the "said station of Alford." In view of the averments contained in the declaration preceding this clause, no inference is possible from the language quoted than that the train had arrived at the station where passengers entrained and detrained. See Barnwell v. Seaboard Air Line Ry., 73 Fla. 482, 74 South. Rep. 497, in which the phrase "at or near" was used in the declaration to designate the place where the train stopped. This court said that that language carried the inference that the train had not stopped "at a station" or depot or a customary or habitual alighting place. That the declaration fails to allege that the plaintiff alighted from the train under the direction or with the consent of the defendant's servants is a correct criticism, because it does fail to so allege. But we think the allegation is unnecessary to the plaintiff's cause of action. The entraining and detraining of passengers is always under the supervision, control and direction of the company's employees, but it is not necessary for a bona fide passenger to obtain the consent of an employee of the company to leave the train when it has arrived at the

484     SUPREME COURT OF FLORIDA.

Atlanta & St. Andrews Bay Ry. Co. v. Kelley—Opinion of Court.

passenger's destination . It is the company's duty to provide suitable means and a suitable place and allow sufficient time for the passengers to alight safely when the train arrives at a station, and in the performance of this duty the detraining of passengers is usually under the direction and with the assistance of the company's employees. If a passenger undertook to leave a train in some unusual and hazardous way and was injured in the attempt, the fact would be the subject of defense under a proper plea. We think the demurrer was properly sustained.

The second assignment of error rests upon a ruling by the trial court admitting testimony of Dr. D. A. McKinnon, who attended the plaintiff as physician when he came ot Marianna soon after the accident. It is not pointed out clearly either in the assignments of error or in the brief of counsel for the defendant just what testimony, statement or language of Dr. McKinnon was objectionable. The assignment of error is that the court erred in permitting "Dr. McKinnon to testify his opinion as to the cause of plaintiff's injury based upon a so-called history of the case taken in connection with the witness' personal examination of the injured parts." An examination of the testimony of Dr. McKinnon does not show that he gave any opinion as to the cause of the injury from which the plaintiff was suffering, further than to say "a fall would have caused the injury." But to this statement there was no objection or exception. The witness had testified that from the history of the case that he had gotten, the plaintiff's injury "had caused a ruptured blood vessel." There was no objection to this statement. A controversy was produced by counsel asking the following question: "What injury?" The witness an-

swered as follows: "A. The injury he described getting off this car." To this testimony there was no objection by defendant's counsel. The witness was then requested to explain to the jury "how that could have caused the injury you found?" "A. By direct violence; I was going by the history he gave." There was no motion to strike out this reply. Counsel for defendant, however, stated to the court that if the witness was "going by the history we object to it." The objection, however, was not followed up. No particular statement of the witness was asked to be stricken, and so the assignment of error rests upon no specific objection or exception, but rather upon the supposition that the witness was permitted to repeat what the plaintiff told him concerning his fall from the train. The record, however, shows that such was not the case. This court has announced many times since its organization that where a party objects to the admission of testimony he should specifically designate what part of the testimony is objectionable and specifically state upon what grounds he bases his objections. See Carter ·v. Bennett, 4 Fla. 283; McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910; Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Brown v. Bowie, 58 Fla. 199, 50 South. Rep. 637.

The second assignment of error rests upon no definite statement or testimony of the witness, nor specific objection, and as the testimony of the witness was not palpably improper and inadmissible, the assignment must fail.

The third assignment of error attacks the court's ruling in which an objection by plaintiff's counsel to a question propounded to Dr. McKinnon on cross-examination was

sustained. The question was as follows: "Q. Could you state positively whether this hemorrhage that the plaintiff was suffering from at the time you spoke of, was caused by a fall from a train, or an automobile or any other injury?" The witness had previously said upon cross-examination that the hemorrhage of the brain "could have been caused by a fall. It also could have been caused otherwise." He said that a physician could not speak with certainty in a given case as to the cause of a hemorrhage of the brain. If a fall is capable of producing a hemorrhage of the brain, it is perfectly obvious that the kind of vehicle from which the person might fall would not in itself have any influence upon the results. So the question bears upon its face its own demerits and was properly objected to and excluded. But after some colloquy between the court and counsel the witness proceeded without objection to answer as follows: "From my examination and treatment of the patient I *could not* swear positively that this hemorrhage of the brain was caused by an external blow to the body or otherwise." So the objectionable question was nevertheless answered and the reason therefore of the assignment of error fails.

The next assignment argued is based upon the court's order overruling the motion for a new trial.

The following instructions were given by the court, which the defendant says were incorrect and prejudicial to its cause:

"If you believe from the evidence that the plaintiff was a passenger on a passenger or excursion train of the defendant company at the time alleged, and that he notified the company or its agents and employees that he desired to get off the train at the Town of Alford, and that

the employees did not notify him when they reached the town of Alford, and did not give him sufficient or reasonable length of time within which to alight from the train, and that he discovered for himself that the train was at the town of Alford and attempted to alight, and was standing on the platform or the steps of the train, and that the train gave a jerk, caused by the agents or employees of the defendant company, and that such jerk caused the plaintiff to lose his balance so that it became necessary for him to jump to prevent his falling, then it would be your duty to find a verdict for the plaintiff for such damages as you believe he may have sustained. or as the evidence may show he has sustained."

"On the question of the length of time I charge you that if you believe from the evidence that the employees of the Railroad Company, the defendant in this case, did not stop the train for a reasonable length of time for the plaintiff to leave the train, and that he was a passenger on that train, and that by reason of the negligence on the part of the defendant company in not giving him a reasonable time to leave the train he was injured in attempting to leave it, and such negligence on the part of the defendant company and its employees was the proximate cause of the injury alleged in the declaration which was sustained by him, if you believe he was injured, then he would be entitled to recover."

These instructions taken in connection with the entire charge of the court upon the subject were without error. The jury were instructed that if a reasonable length of time was allowed by the persons in charge of the train to enable the plaintiff to alight at Alford and that he had been warned that the train had arrived there and that the defendant, through its employees, did not know that the

plaintiff had not alighted when the train started, then it was not guilty of negligence and the verdict should be for the defendant. The defendant contents that a passenger in leaving a train, when it arrives at a station, is guilty of negligence which precludes his recovery in case of accident, if he does not leave the train through the particular door or from the particular platform that may have been selected at the time by some employee or another as the proper exit through or from which passengers should depart even though such selection of the suitable exit had not been communicated to the passengers. We do not agree to such doctrine, and counsel fail to cite us to any authority in support of it.

In the case of Florida R. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963, cited by counsel for the plaintiff in error, this court said that the "duty of the carrier to safely deilver a passenger at his desired destination, involves the duty of *observing* whether he has actually alighted before the car is again started." If the railroad company, through its employees, prefers to have the passengers leave the car from one exit or the other, that is to say, from the front or rear end of the car, whatever may prompt the preference, whether convenience to the company or safety to the passengers, the latter should be definitely advised and informed by intelligible announcement upon the arrival of the train from which door they are expected to depart. Again the court said "the carrier having received the fares knows what passengers intend to leave the cars at any station, and before starting the cars again the agents of the carrier *should see* that *all* who *are* leaving the cars have safely alighted." The charges quoted are not inconsistent with the views as expressed by this court concerning a car-

rier's duty in the matter of attending to the departure of passengers at their destination. It follows from the views expressed by the court that sufficient time should be given to enable all persons desiring to leave the train to do so with safety.

The court refused several instructions requested by the defendant; they were as follows:

1. "The burden of proof in this case is upon the plaintiff to prove that the defendant was negligent as alleged; that plaintiff was injured as alleged by such fall, and to prove by competent evidence the nature and extent of the injuries resulting from such fall, and to prove the damage in money values to a reasonable degree of certainty, and your verdict must be based upon the evidence and not upon theory or the argument of counsel. Where the evidence is conflicting you should reconcile it to such of the facts which seem most probable and find your verdict accordingly. The plaintiff must prove his case by not only a greater weight of the evidence but that weight or preponderance which reasonably satisfies you that the plaintiff is entitled to recover."

2. "If you believe from the evidence that the plaintiff, while defendant's train was in motion, went to the rear end of the train for the purpose of leaving the same and attempted to make his exit therefrom without the knowledge of defendant, and, in attempting so to do, was injured as alleged in the declaration, then, in such event, you are instructed that the injury received by the plaintiff would not be caused by the negligence of the defendant, and your verdict should be for the defendant."

3. "If you believe from the evidence that the defendant, in the operation of its train of cars on which the

plaintiff was a passenger, stopped its said train to per-
mit passengers to alight therefrom and to receive other
passengers thereon and that, after stopping such train
for such time that the same was then put in motion in
the ordinary and customary way, and that while the
train was so stopped the plaintiff had a reasonable and
sufficient time, by the use of ordinary care and prudence,
in which to leave said train while the same was standing
still but did not do so, and thereafter, without the knowl-
edge of the defendant or any of its employees in charge
of said train, went to the rear end thereof for the pur-
pose of making his exit therefrom and that, while at-
tempting said exit, said train was put in motion and by
reason thereof the plaintiff lost his balance and fell or
jumped from said train while the same was in motion,
then, in such event, the defendant would not be guilty of
negligence in the operation of its said train and car and
it would be your duty to find for the defendant, even
though you should find that the plaintiff was injured by
reason of the falling or jumping from the train in the
manner alleged in the declaration and that such falling
or jumping by the plaintiff from said train was actually
caused by the sudden starting of the train in motion."

4. "Unless the defendant's employees and servants
knew or had reasonable ground to know that the plaintiff
was attempting to leave its train from the rear end of the
last coach thereof at the time the train was starting in
motion, after having stopped said train for a sufficient
length of time to allow passengers for the station at Al-
ford to leave the train, and to receive other passengers
thereon, if it did so stop its train for such purposes for
such reasonable time, then you could not find for the
plaintiff, even though he was thrown from the train by

the sudden starting thereof, or, by reason of the sudden starting of said train, the plaintiff lost his equilibrium and fell or jumped from said train by reason thereof, and your verdict should be for the defendant."

5. "If you believe from the evidence that the defendant stopped its train on which the plaintiff was a passenger for a reasonably sufficient length of time to permit passengers on said train for the town of Alford to safely leave said train from the usual and customary place of exit and to receive other passengers thereon who desired to board said train at said point, then in such event you will find for the defendant, unless you should further find from the evidence that the defendant, by its servants and employees in charge of said train knew or should reasonably have known that the plaintiff was leaving said train from the rear end thereof, and so knowing that he was so leaving started said train in motion."

6. "It is the duty of a passenger on a railroad train to exercise ordinary and reasonable care and prudence in leaving a train when his station has been reached, and to leave such train at such place where the railroad company has provided facilities for him to alight, and if he does not do so and is injured solely by his own negligence, then in such event, he would not be entitled to recover for any damages which might be suffered by him in making his exit from said train from such place where no facilities have been provided for him to make his exit, unless the railroad company, by its servants and employees in charge of said train, knew or reasonably should have known that such passenger was making his exit from said train at such place where it was not customary or usual for passengers to alight."

7. "You are instructed as a matter of law under the evidence in this case that the plaintiff is at least guilty of such negligence as would contribute to his own injury if he was injured."

8. "You are instructed that in this case that the plaintiff has not shown that the defendant is guilty of such negligence as is the proximate cause of the plaintiff's injury, if the plaintiff was in fact injured, and your verdict should be for the defendant."

9. "If you believe from the evidence in this case that the defendant by its servants, agents and employees in charge of the defendant's train on which the plaintiff was a passenger, at the town of Alford stopped said train for a reasonably sufficient time to permit the passengers thereon for the town of Alford to safely alight and to receive other passengers at that point on said train, then, in such event, the defendant would not be guilty of the negligence as alleged in either count of the declaration, and it would be your duty to find your verdict for the defendant."

10. "Before you can find a verdict for the plaintiff in this case, even though you may believe he has been actually injured, you must find by a preponderance of the evidence that the agents, servants, and employees of the defendant company actually knew that the plaintiff was attempting to make his exit from the rear end of said train, or that they should have known that the plaintiff was so attempting to alight, and under such circumstances suddenly started the train in motion. The defendant company would not be liable for any injury sustained by the plaintiff in leaving said train at the rear end thereof received by the plaintiff by reason of sud-

denly starting the train in motion unless the defendant knew, or by the exercise of the highest degree of care and diligence, should have known that the plaintiff was attempting to leave said train at the rear end thereof at the time said train was placed in motion."

We number these charges for convenience from one to ten inclusive, respectively. The substance of charge numbered one in correct form was given by the court in its general charge unencumbered by confusing phrases and misleading suggestions. The suggestion, for instance, that the plaintiff must "prove by competent evidence the nature and extent of the injuries resulting from the fall," etc., is equivalent to the statement that the jury might, after certain evidence was admitted by the court reject it as incompetent, that is to say as not being the fit or appropriate proof in the case, a matter exclusively within the province of the judge. The word as used in the requested instruction is confusing in that it might be construed to mean "admissible," "relevant," "sufficient" or "adequate." See 16 Cyc. 848. If the first meaning was given to the word the instruction upon that point would be wrong; if the last meaning was taken there would have been no objection to the phrase. There are other objectionable features in the requested charge. To say that where the evidence is conflicting the jury should "reconcile it to that state of facts which *seems* most probable," is not exactly the same thing as to say that in such case the jury should reconcile (harmonize) it upon the theory that each witness has spoken truthfully, and if that is impossible then the jury should reject that testimony or evidence which they deem unworthy of belief, an instruction which is generally conceded to be correct, and which this court has approved. The last sentence of the charge is

practically meaningless if it does not convey the idea
that, although the judge has held that the allegations of
fact as made in the declaration sufficiently show a cause
of action, nevertheless the plaintiff must not only prove
those facts, but must further satisfy the jury that he is
entitled to recover, in order to be entitled to a verdict.
That is entirely wrong. The case is made by the declara-
tion. Where the jury is convinced by a preponderance of
the evidence that the facts as alleged in the declaration
are true the plaintiff is entitled to a verdict, unless the
jury believes from the evidence that some fact averred in
a plea which would defeat recovery is also true, but in
that case the burden is on the defendant, not the plaintiff.

The requested instruction numbered two we deem to
be erroneous for the reasons already given concerning a
carrier's duty to its passengers. Furthermore, it assumes
that leaving the train by the rear door was *per se* an act
of negligence which would preclude the plaintiff from re-
covering.

The third instruction requested was fully covered in
the court's general charge, and other instructions re-
quested by defendant and given. It is not necessary for
the court to repeat in different forms of expression a
correct principle of law that is applicable to the case.
See Hoskins v. State, 70 Fla. 186, 69 South. Rep. 701;
Pelham v. State, 70 Fla. 295, 70 South. Rep. 87; Fine v.
State, 70 Fla. 412, 70 South. Rep. 379.

The fourth requested instruction was incorrect because
as this court said in the Dorsey case, *supra,* it is the duty
of the carrier to observe whether a passenger has actually
alighted before the car is started again, and that duty fol-

lows because of another duty to *see* to *it* that all who are leaving the cars have safely alighted.

The fifth instruction might have been given upon the theory that as the plaintiff's ticket provided for his transportation to St. Andrews, a point on the coast beyond Alford, the railroad company could not know that he desired to leave the train at Alford, but the evidence shows, and the fact is not controverted, that the plaintiff notified the defendant that he wanted to get off at Cottondale, a station which the train reached before arriving at Alford, but as the train had passed Cottondale he would leave it at Alford.

The sixth instruction is misleading, and the subject of the requested charge was correctly and fully given by the court in another charge at defendant's request after it was amended.

The seventh and eighth instructions were not justified by the evidence.

The ninth instruction was properly refused because in the first place it did not embrace defendant's full duty in the premises, and, seconly, the subject was fully and correctly covered by charge lettered "F" requested by the defendant and the court's general charge.

The tenth instruction was inapplicable to the evidence because the fact that the plaintiff intended to leave the train at Alford was made known by him to the defendant's employees; this was not controverted, therefore, under the circumstances it was defendant's duty to observe whether he had actually alighted, and to see to it that he had safely left the train as much so as if the plaintiff's ticket provided for his transportation to Alford.

The plaitniff requested the court to give the following instruction: "If you believe from the weight of the evidence that Kelly had notified the agent of the company that he, Kelly, wished to leave the train at Alford and that Kelly, upon ascertaining that the train had arrived at Alford, immediately proceeded to get his baggage and started to leave the train with reasonable diligence, and that without giving Kelly a reasonable time to safely alight from said train the servants of the defendant caused the train to start without warning to Kelly, and so starting caused Kelly to so lose his balance and fall, or that he was thereby caused to violently fall upon the ground and that he thereby sustained the injuries alleged in the declaration, then you should find in favor of the plaintiff in such sum of damage as you may find from the evidence he has sustained." The instruction was given and the defendant assigns it as a ground for a new trial. For the reasons which have already been expressed in this opinion we think there was no error in the court's giving the charge.

The remaining ground of the motion for a new trial which is discussed is that the verdict is not supported by the evidence. The sufficiency of the evidence to sustain the verdict is vigorously attacked. We have carefully read it, and while there is much conflict between the witnesses as to the circumstances under which the plaintiff left the train, and the severity of his fall, the appellate court has no power to substitute its view of the evidence and what it established for that of the jury where there is substantial evidence to support the latter's finding. For a discussion of this subject see Florida Fire and Casualty Co. v. Hart, 73 Fla. 970, 75 South. Rep. 528. We think that honest and intelligent minds might fairly differ in

their conclusions as to what the evidence proved concerning the circumstances of the plaintiff's departure from the train, his fall and injuries, therefore the verdict of the jury should be accepted as just.

The judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, JJ., concur.